**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Andrew J. Johnston (22712-424), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 6183 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| John DeVries, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983, Plaintiff Andrew J. Johnston, a federal prisoner convicted of attempted bank robbery, alleges that he was arrested without probable cause, the vehicle he was driving was improperly searched, and defendant John DeVries converted the vehicle by having it towed. Before the Court is DeVries's motion for summary judgment, to which Johnston has responded. For the reasons stated below, DeVries' motion is granted.

**I. Summary Judgement Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v.*

*Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "Thus, 'summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**II. Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.) Local Rule 56.1(a)

requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). L.R. 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." L.R. 56.1(b)(3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

DeVries filed a Rule 56.1 statement of material facts with his motion for summary judgment. (Dkt. 167.) Consistent with the local rules, DeVries also provided Johnston with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 170.)

In response, Johnston submitted a response to DeVries's statement of material facts (Dkt. 174); a declaration (Dkt. 178); a memorandum in support of his opposition to summary judgment

(Dkt. 176.); a statement of additional facts (Dkt. 179.); and an objection to DeVries' exhibit (Dkt. 167-3) (Michael Muir's declaration) (Dkt. 175.)

Johnston denies many of DeVries' statements of fact supported by testimony provided by Michael Muir, a witness to the attempted bank robbery for which Johnston was convicted after a jury trial. Muir testified at Johnston's trial and provided additional information by means of a declaration supporting DeVries' motion. Muir's declaration and trial testimony recount what Muir witnessed and his call to 911 during and immediately following the bank robbery. Johnston argues that Muir's testimony was "fabricated" and that he was "solicited to falsely testify" to justify Johnston's arrest. (Dkt. 175, pg. 2.) Johnston also argues that the 911 recording was fabricated. (Dkt. 175, pg. 2; Dkt. 176, pg. 5.) Johnston disputes "the existence of any such witness." (Dkt. 174, pg. 2.) In support of his argument, Johnston points out that Byline Bank did not have any record of a transaction by Muir for the date and time that the bank robbery took place. (Dkt. 176, pg. 7.)

Johnston's denials are ineffective. The mere fact that Byline Bank did not have a record of a transaction by Muir at the time and date of the attempted bank robbery does not demonstrate that Muir does not "exist" or that he did not observe the attempted bank robbery and did not call 911 to report the attempted robbery. A non-movant cannot create material fact disputes based on "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Eng'r Assoc.*, 924 F.2d 655, 659 (7th Cir.1991). "Speculation does not create a genuine issue of fact; instead, it creates a false issue the demolition of which is a primary goal of summary judgment." *Hedberg v. Ind. Bell Tel. Co., Inc.,* 47 F.3d 928, 932 (7th Cir.1995). Muir's existence, his testimony, and the resulting 911 call are supported by Muir's testimony, multiple individuals' testimony involved in the attempted bank robbery, the subsequent

4

arrest of Johnston, and 911 recording itself.

Furthermore, Johnston is precluded from denying Muir's statements and the 911 telephone call under *Heck v. Humphrey*, 512 U.S. 477 (1994).[1] The *Heck* bar can also limit the evidence a plaintiff may present in support of his case. *See Casares v. Bernal*, 790 F. Supp. 2d 769, 781-82 (N.D. Ill. 2011) (plaintiff not allowed to introduce evidence contrary to the state court's finding in his criminal case that he intentionally struck a police officer); *Berberena v. Pasquino*, No. 03-557-CJP, 2006 WL 3253318, at * 2 (S. D. Ill. Nov. 9, 2006) (plaintiff prohibited from denying he struck correctional officer contrary to finding of guilt in disciplinary proceeding).

With the above discussion in mind, the facts below are taken from the Defendant's Local Rule 56.1 statements of material facts, Johnston's responses to those facts, and Johnston's declaration. The Court accepts as true any undisputed statements of fact from Defendant's statements. Where the statements are properly supported by the cited materials and are not otherwise properly disputed by the evidence raised by the opposing party, the Court considers those statements as undisputed. *See* LR 56.1(e)(3). The Court has carefully examined each response submitted by the parties for relevancy, evidentiary support, and admissibility in construing the facts of this case and gives deference to Johnston's version of the facts where they are properly presented and supported by admissible evidence. The Court will not consider purely legal arguments, responses lacking evidentiary support, or responses that are inconsistent with deposition testimony.

---

[1] The full *Heck* analysis and Johnston's objections to any *Heck* bar are addressed in the Analysis section.

**III. Facts**

Deputy Chief DeVries

On June 25, 2017, DeVries, in his capacity as Deputy Chief, was working at the Harwood Heights Police Station. (Dkt. 167, ¶ 4.) The Harwood Heights Police Station is located at 7300 West Wilson Avenue, Harwood Heights, Illinois. (*Id*., ¶ 5.) At approximately 4:40 p.m., DeVries learned of an attempted robbery of the Byline Bank through police radio communication. (*Id*., ¶ 6.) The Byline Bank, located near the intersection of Harlem Avenue and Leland Avenue, is approximately one block west of the Harwood Heights Police Station. (*Id*., ¶ 7.) Immediately upon learning of the attempted robbery, DeVries drove toward the bank to assist the patrol units responding to the attempted bank robbery call. (*Id*., ¶ 8.) Over the radio, DeVries learned that the robbery suspect was wearing a black baseball-style cap with "Security" written across the front of the cap, had black gloves, a partial mask covering his face, and was wearing dark clothing. (Dkt. 167-1, pg. 309.)

While in route to the bank, DeVries learned that a witness to the attempted bank robbery was in the alley near the 4700 block of Harlem Avenue, near the bank. (Dkt. 167, ¶ 9.) It took DeVries approximately one minute to drive from the police station to the area where the witness was located. (*Id*., ¶ 10.) On arrival, DeVries spoke with Michael Muir, the witness, regarding Muir's observations of the attempted bank robbery. (*Id*., ¶ 11.) DeVries learned that the suspect who attempted to rob the bank drove away in an older model, forest green colored Buick or Pontiac, with an Illinois license plate. (*Id*., ¶ 12.) DeVries immediately dispatched the information identifying the physical characteristics of the suspected offender and vehicle through the Netcom radio. (*Id*., ¶ 13.) DeVries also ran the reported license plate information over the same dispatch system that provided him with a description of the suspected vehicle and confirmed the license

plate number was Q93 7444. (*Id*., ¶ 14.) Several minutes later, DeVries learned that Norridge Police Officer Sasiadek had detained a suspect just north of Forest Preserve Drive and Cumberland Avenue. (*Id*., ¶ 15.)

Approximately ten to fifteen minutes after speaking with Muir, DeVries arrived at the scene where the suspect was being detained. (*Id*., ¶ 16.) At the scene, DeVries observed Johnston, a white male, as the suspect detained for the attempted bank robbery. (*Id*., ¶ 17.) DeVries also observed an older model, green, Buick vehicle with Illinois license plate number Q93 7444 parked on the shoulder of the southbound lane of Cumberland Avenue. (*Id*., ¶ 18.) While at the scene, DeVries looked through the vehicle's clear windows and observed a black baseball type cap with the word "Security," black gloves, and dark colored clothing on the floorboard behind the driver's side seat. (*Id*., ¶ 19.)

After discussing the arrest with Norridge Police Officer Sasiadek, DeVries learned that Johnston was driving the older model green Buick southbound on Cumberland Avenue at the time Officer Sasiadek pulled over the vehicle and subsequently detained Johnston. (*Id*., ¶ 20.) About five minutes after being on the scene, and because the attempted robbery occurred in Harwood Heights, DeVries took custody of Johnston and transported him back to the Byline Bank for a "show-up." (*Id*., ¶¶ 23-24.)

At the Byline Bank, the two bank teller witnesses to the attempted bank robbery identified Johnston as the attempted bank robber both physically and via his voice. (*Id*., ¶¶ 28-30.) In connection with the investigation, DeVries authorized the Harwood Heights Police Department to tow the green Buick to a secured garage. (*Id*., ¶ 31.) That same day, the Harwood Police Department released the green Buick to its owner, Samantha Bellinder. (*Id*., ¶ 32.)

7

Police Officer Anita Sasiadek

On July 25, 2017, Norridge Police Officer Sasiadek learned of an attempted robbery of the Byline Bank through a police radio communication system used by law enforcement to share information among five towns, including Harwood Heights, Norridge, Schiller Park, River Grove, and Elmwood Park. (*Id.*, ¶¶ 33-34.) The suspected attempted bank robber was described as a skinny white male driving an older model green Buick. (*Id.*, ¶ 35.) By the time Officer Sasiadek got into her squad car to respond to the bank robbery call, it was known that the license plate on the suspected vehicle was Q93 7444 and registered to a green Buick. (*Id.*, ¶ 36.) While driving north on Cumberland Avenue in search of the suspect, Officer Sasiadek observed a green Buick traveling south on Cumberland Avenue. (*Id.*, ¶ 37.) Approximately ten minutes had passed from the time that Officer Sasiadek first heard the attempted robbery call to the point where she first saw Johnston's vehicle driving south on Cumberland Avenue. (*Id.*, ¶ 38.)

Officer Sasiadek made a U-turn and positioned herself behind Johnston's vehicle. (*Id.*, ¶ 39.) Officer Sasiadek confirmed the license plate number on the green Buick that Johnston was driving matched the plate number reported on the offending vehicle. (*Id.*, ¶ 40.)

Officer Sasiadek activated her overhead lights on her squad car and pulled over Johnston's vehicle. (*Id.*, ¶ 42.) Officer Sasiadek detained Johnston for the attempted robbery of the Byline Bank. (*Id.*, ¶ 43.) After detaining Johnston, Officer Sasiadek looked through the vehicle's clear windows and observed a black baseball cap with the words "Security" and clothing in vehicle. (*Id.*, ¶ 44.) The "security" baseball cap and clothing matched the description of the cap and clothing worn by the suspect who attempted to rob the Byline Bank. (*Id.*, ¶ 45.)

Michael Muir

On July 25, 2017, at approximately 4:45 p.m., Muir drove his vehicle into the drive through lane of the Byline Bank to obtain a new debit card. (*Id*., ¶ 46.) The bank teller's window was approximately nine feet long, four feet tall, and two feet away from Muir. (*Id*., ¶ 47.) From his vantage point, Muir could clearly see "100%" into the bank. (*Id*., ¶ 48.)

While waiting in the drive through lane, Muir observed an individual dressed in a hoodie, gloves, black hat with the word "Security", and dark clothing walk toward the bank entrance. (*Id*., ¶ 50.) As the individual walked through the bank's doors, he pulled a mask over his face. (*Id*., ¶ 52.) The individual walked directly toward the closest bank teller, Vanessa. (*Id*., ¶ 53.) Muir held up his phone, pointed to it, and gestured to Vanessa as if to call the police. (*Id*., ¶ 54.) He then mouthed to Sharon, a second bank teller, "you're being robbed" two or three times before she realized she was being robbed. (*Id*., ¶ 55.) It appeared that the individual then immediately fled the bank. (*Id*., ¶ 56.)

Muir dialed 911 to report the attempted bank robbery. (*Id*., ¶ 57.) He informed the 911 operator that a white male attempted to rob the Byline Bank on Harlem Avenue in Harwood Heights. (*Id*.) Muir informed the 911 operator that the suspect was wearing a black "Security" cap, black vest, and black gloves. (*Id*., ¶ 58.) He also informed the 911 operator that he observed the suspect go to an alley near the rear of the Harwood Heights Police Department building after existing the bank. (*Id*., ¶ 59.) The suspect proceeded to remove his clothing while standing in the alley. (*Id*., ¶ 60.) The suspect then got into a green Pontiac or Buick vehicle with a license plate of Q93 7444. (*Id*., ¶ 61.) The green vehicle drove north at which point Muir was no longer able to see the vehicle. (*Id*., ¶ 62.)

9

Following a jury trial, Johnston was convicted of attempted bank robbery under 18 U.S.C. § 2113(a) and was sentenced to imprisonment for fourteen years. (*Id.*, ¶ 63.) Johnston's conviction and sentence were affirmed by the Seventh Circuit Court of Appeals. (*Id.*, ¶ 64.) *See USA v. Johnston*, 814 Fed. App'x 142 (7th Cir. 2020).

**IV. Analysis**

Defendant first argues that Johnston's false arrest and illegal search of his vehicle claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

"In *Heck v. Humphrey*, [512 U.S. 477 (1994), the Supreme Court] held that where success in a ... [42 U.S.C.] § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004). If the facts at issue in the civil suit are distinct from the issues decided in the criminal case, the *Heck* bar does not apply because a victory on the § 1983 claim would not necessarily imply the invalidity of the conviction. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). However, where the grounds for the conviction arise from the same facts underlying the plaintiff's constitutional claim, generally the claim will be barred by *Heck*, because typically the plaintiff cannot prevail without implying that he did not commit the crime. *See McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). It is irrelevant whether a plaintiff is directly attacking his conviction; "if [a plaintiff] makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

In response to DeVries' *Heck* argument, Johnston argues that it is procedurally defaulted and waived because DeVries did not raise it in a motion to dismiss prior to filing his motion for

10

summary judgment. DeVries need not have filed a motion to dismiss to preserve his *Heck* argument. But, as an affirmative defense, the *Heck* defense can be waived. *See Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011.) DeVries did not plead the affirmative defense in his answer (Dkt. 22), but waiver results only if the delayed assertion of the affirmative defense would cause prejudice to the plaintiff. *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005); *Mack v. City of Chicago*, 723 Fed. App'x 374, 377 (7th Cir. 2018) (unpublished). Generally, a plaintiff is not prejudiced if he has the ability to address the affirmative defense. *Curtis*, 436 F.3d at 711 (plaintiff not prejudiced by failure to exhaust administrative remedies defense because plaintiff was aware of the issue of exhaustion when he filed suit and had the opportunity to address the defense in his response to the summary judgment motion); *Mack*, 723 Fed. App'x at 377 (plaintiff not prejudiced by assertion of *Heck* bar because he had the opportunity to address the issue on appeal).

Here, Johnston argues that neither Officer Sasiadek nor Deputy DeVries had probable cause to arrest him or search his vehicle. Johnston argues that Muir did not witness the attempted bank robbery and that he "does not exist" and the 911 recording is fake. He further alleges that Officer Sasiadek did not have probable cause to stop him and detain him based on video footage of the traffic stop that, according to Johnston, calls into question what Officer Sasiadek knew and when she knew it.[2] A review of the trial transcript and appeal of the federal criminal demonstrate that Plaintiff's present arguments and basis of his claims clearly call into question the validity of his conviction. Johnston had the opportunity to address the *Heck* bar in his response to the motion for summary judgment (as he did). Furthermore, there are no allegations in his amended complaint

---

[2] The Squad 510 video captures Officer Sasiadek following Johnston, pulling him over, and detaining him, as well as the other officers arriving at the location. Johnston selects bits and pieces of the approximately 10-minute recording in an attempt to show that Officer Sasiadek did not have probable cause to arrest him. However, the bits and pieces are taken out of context and do not support the conclusions he attempts to draw from them.

indicating that he was alleging Muir did not "exist" and his testimony along with essentially all of the other witnesses' testimony at the criminal trial would be called into question, giving DeVries notice that his claims would be subject to *Heck*. Thus, the Court may properly analyze whether Johnston's claims are *Heck* barred.

In order to determine if Johnston's false arrest claim and subject search of his vehicle claim are *Heck* barred, the Court must review the record of the criminal trial. The following summary is derived from the appeal of Johnston's federal criminal trial and jury trial transcript.

In July of 2017, a white male wearing a mask, gloves, and a black hat with the word "Security" on it approached a teller at the Byline Bank in Hardwood Heights, Illinois. (*Id.*, at 144.) The male ordered the teller to "Put your hands up. This is a robbery." (*Id.*) A branch supervisor and a customer at the drive-up window, Michael Muir, witnessed the exchange. (*Id.*) Muir waved his phone and mouthed that he was going to call 911 to the teller. (*Id.*) Having seen the teller nod her head, the robber left the bank. (Id.)

Muir called 911 and described the robber and his clothes and reported that the robber drove off in a green car, giving the car's make, model, and license plate number. (*Id.*) Approximately two miles from the bank, a police officer who heard about the attempted bank robbery from dispatch, including the description of the suspect and vehicle from Muir, saw a green car matching the description. (*Id.*) The police officer pulled the car over and ordered the drive, Johnston, out of the vehicle. Other officers arrived at the scene, including DeVries, and observed through the car's window gloves, a mask, and a black cap with the word "Security" on it. (*Id.*) Johnston was taken into custody and brought back to the bank for a show-up where the teller and her supervisor identified Johnson as the robber. (*Id.*)

At trial, the teller, the bank supervisor, Muir, and police officers involved, including

DeVries, testified consistent with this summation. In addition, a recording of the 911 call was played for the jury. Johnston was convicted and sentenced for attempted bank robbery. See 18 U.S.C. § 2113(a). Johnston's conviction and sentence were affirmed by the Seventh Circuit. *Johnston*, 814 Fed. App'x 142.[3]

In response to DeVries' motion for summary judgment, Johnston implausibly argues that none of the police officers, including DeVries, had probable cause to arrest him because Muir and the 911 call were fabricated-in other words, Muir never witnessed the bank robbery and he never called 911-thus, there was no reason to initially stop his vehicle and the police officers would not have known about the description of the bank robber or the items found in his car. This argument requires not only false testimony by Muir at the criminal trial, but also false testimony by the bank teller, the bank supervisor, and the police officers who heard the 911 call. In addition, it would require a finding the 911 call used in Johnston's criminal conviction was fabricated. For Johnston to proceed on his false arrest claim based on these facts clearly calls into question the validity of his conviction and is therefore *Heck* barred.

Similarly, his illegal search claim would be *Heck* barred as Johnston contends that the clothing and "security" cap were planted in the vehicle after it was towed. Such argument is contrary to his conviction and without support.

Johnston also incorrectly argues that *Heck* only applies if he filed suit after he was convicted, and he filed suit prior to his actual conviction. No such rule exists.

Even if Johnston's false arrest and illegal search claims were not *Heck* barred, no genuine

---

[3] The Court notes that the Seventh Circuit affirmed the District Court's denial of Johnston's motion to quash arrest and suppress evidence, finding that the District Court properly ruled that Muir's contemporaneous description of the robber's vehicle to 911, that matched the make, color, and license plate of Johnston's car, constituted probable cause for his arrest for attempt robbery. *Johnston*, 814 Fed. App'x at 146.

13

issue of material fact exists as to whether probable cause existed to arrest Johnston and search his vehicle.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Whether a police officers have probable cause to arrest depends on what they heard and saw, and the facts known to them at the time of arrest. *See Tebbens v. Mushol*, 692 F.3d 807, 816 (7th Cir. 2012); *Carmichael v. Village of Palatine,* 605 F.3d 451, 457 (7th Cir. 2010). The inquiry focuses on whether at the time of the arrest, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The court considers the totality of the circumstances known to the officers at the time of the arrest. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 718 (7th Cir. 2013). Furthermore, the collective knowledge doctrine allows police officers to make an arrest not just on their own first-hand knowledge, but with reasonable reliance on facts derived from other officers. *United States v. Parra,* 402 F.3d 752, 764-65 (7th Cir. 2005).

The record indicates that Johnston was first arrested by Officer Sasiadek based on the vehicle and license plate matching the vehicle and license plate of the attempted bank robbery suspect, Johnston matching the description broadcast the attempted bank robber, and the vehicle being within the area of the bank. These undisputed facts demonstrate probable cause for Officer Sasiadek to arrest Johnston. *United States v. Johnston*, 814 Fed. App'x at 146 ("customer's contemporaneous description of the robber's vehicle to 911, which matched the make, color, and license plate of Johnston's car, supplied probable cause for an arrest for attempted robbery"). DeVries also had this same knowledge when arriving at the location where Officer Sasiadek pulled

14

Johnston over providing him probable cause to arrest Johnston.

Under the automobile exception to the warrant requirement, police may conduct a warrantless search of an automobile if they have probable cause to believe the vehicle contains evidence of criminal activity. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). The search may extend to "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U. S. 332, 347 (2009).

DeVries had probable cause to believe that the vehicle contained evidence of criminal activity after viewing the "Security" cap, gloves, and mask through the window of the vehicle. Thus, Johnston's illegal search of the vehicle claim also fails on the merits. *Johnston*, 814 Fed. App'x at 146 (seizure of mask, gloves, and cap was lawful because they items matched the dispatcher's report).

Lastly, Johnston's conversion claim against DeVries for having the vehicle towed fails because the vehicle's title was not held by Johnston, but was held by Johnston's girlfriend at the time. In order to establish the tort of conversion, "a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016) (*citing In re Karavidas*, 2013 IL 115767, ¶ 61). Johnston did not have an absolute and unconditional right to the immediate possession of the vehicle because the title was not in his name. In addition, DeVries had the authority to impound the vehicle because it was used in connection with attempted commission of the attempted bank robbery. *See* Village of Harwood Heights, IL, Ch. 10, § 72.020 (Harwood heights ordinance authorizing motor vehicles used in connection with commission or attempted

commission of felony to be seized or impounded). Accordingly, Johnston cannot prevail on his conversion claim.

## V. Conclusion

For the reasons stated above, the Court grants DeVries' motion for summary judgment [167]. Final judgment shall enter for DeVries on all claims.[4]

Date: 9/2/2021 /s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge

---

[4] If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* Plaintiff has struck out and has been so informed, *Johnston v. Hoogland*, Case No. 20 cv 7814, Dkt. 15, pgs. 1, 7; and his arrest in 2017 does not constitute imminent danger of serious physical injury. Therefore, if Plaintiff appeals, he must pay the $505 filing fee.